IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

KNITTLES TOWING, INC.,

    Plaintiff,

v.                                                                                 Civ. No. 14-211 JCH/KK

DANLAR COLLISION, INC. *et al.*,

    Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART
## DANLAR DEFENDANTS' CONSOLIDATED DISCOVERY MOTIONS

THIS MATTER comes before the Court on the Consolidated Motion to Determine Sufficiency of Plaintiff's Answers to Requests for Admission and Motion to Compel ("consolidated discovery motions") (Doc. 83), filed by Defendants Danlar Collision, Inc., Danlar Towing, L.L.C., Danlar Corporation, Inc., Danlar Towing North, L.L.C., Larry Knippel, and Dan Knippel ("Danlar Defendants") on October 13, 2014. The Court, having reviewed the submissions of the parties and the relevant law, and being otherwise fully advised, FINDS that the consolidated discovery motions are well taken in part, and hereby GRANTS the motions in part and DENIES them in part as follows.

1.     **Request for Admission ("RFA") No. 7 and Interrogatory No. 9**

The Danlar Defendants first take issue with Plaintiff's answers to their RFA No. 7 and Interrogatory No. 9. RFA No. 7 asks Plaintiff to admit that, "at all times subsequent to February 11, 2012, the domain names www.knittlestowing.com, www.knittletowing.com, and www.knittles.com have not been registered by or on behalf of any Defendant." (Doc. 83-1 at 2.) Interrogatory No. 9, in turn, requests that Plaintiff, if it "denied any [RFA]… provide a detailed explanation of why [it] so responded and please identify all documentary evidence that supports [its] denial." (Doc. 83-2 at 5.)

1

>Plaintiff denied RFA No. 7 (Doc. 83-1 at 2), and objected that Interrogatory No. 9 is
>
>excessively vague and discovery is just commencing. Plaintiffs denied requests that were untrue. For example, Plaintiff did own www.knittlestowing.com, www.knittles.com at the requested date. Defendant offered to sell www.knittlestowing.com through their agent to Plaintiff. In addition, Danlar defendants did not produce relevant documents, such as their email targeting Plaintiff and others. It is unclear as to what additional documentation may be uncovered during discovery.

(Doc. 83-2 at 5-6.) Plaintiff subsequently supplemented its answers to RFA No. 7 and Interrogatory No. 9 by stating that "[t]he identity of the owner of Knittles.com is not known to this party." (Doc. 83-5 at 1.)

In its response to the Danlar Defendants' consolidated discovery motions, Plaintiff for the first time objects that RFA No. 7 is compound because it asks for admissions about three separate domain names. (Doc. 86 at 2.) While there is some merit to this objection, Plaintiff raised it for the first time in its response, and the Court therefore deems it to have been waived. *Pham v. Hartford Fire Ins. Co.*, 193 F.R.D. 659, 661-62 (D. Colo. 2000). To the extent that Plaintiff can neither admit nor deny RFA No. 7 as to the domain name www.knittles.com, as its supplemental answer suggests, Plaintiff is reminded of its obligations under Federal Rule of Civil Procedure 36, which states in pertinent part:

>[t]he answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

Fed. R. Civ. P. 36(a)(4). This appears to be what Plaintiff is suggesting with respect to the domain name www.knittles.com, but Plaintiff has failed to include the explicit statement Rule 36 requires, and is hereby ordered to do so if appropriate. If not, Plaintiff is hereby ordered to admit or deny RFA No. 7 as to the domain name www.knittles.com without reservation.

Regarding the domain names www.knittlestowing.com and www.knittletowing.com, the record currently before the Court provides no basis for Plaintiff's denial of RFA No. 7. "[W]hen good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest." Fed. R. Civ. P. 36(a)(4). Plaintiff cannot in good faith rely on its lack of knowledge regarding the owner of www.knittles.com to deny, or assert lack of knowledge for failing to admit or deny, RFA No. 7 as to the other two specified domain names. Plaintiff is therefore ordered to clearly and separately admit or deny RFA No. 7 as to the domain names www.knittlestowing.com and www.knittletowing.com.

Regarding Interrogatory No. 9, the Court agrees with Plaintiff's timely objection that it is vague in requesting a "detailed explanation" for Plaintiff's denial of RFA No. 7, without giving any indication of what details are sought.[1] Plaintiff's objection on this point is therefore sustained, and the Court will deny the Danlar Defendants' consolidated discovery motions insofar as they now seek to specify what details Plaintiff should include in its answer to Interrogatory No. 9.[2] As to RFA No. 7, Plaintiff has offered an explanation for its denial regarding the domain name www.knittles.com, and its answer is deemed adequate in this respect. However, Plaintiff has provided no explanation for its denials regarding the other two domain names, and if it persists in these denials, is hereby ordered to explain them in a supplemental answer to Interrogatory No. 9.

---

[1] Arguably, the Danlar Defendants' Interrogatory No. 9 is also objectionable because it is compound and in effect transforms every RFA into a separate interrogatory. *Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 445 (C.D. Cal. 1998). Plaintiff has not raised this objection and the Court will not address it. However, the Court notes that its compound nature necessarily renders it vague. This single interrogatory seeks explanations for Plaintiff's denials of twenty-three distinct RFAs. (Doc. 83-1 at 5.) As such, it cannot realistically specify what details it is requesting Plaintiff to include in each of twenty-three distinct explanations.

[2] This ruling also applies to the Danlar Defendants' Interrogatory No. 10, which is functionally indistinguishable from their Interrogatory No. 9.

2.      **Request for Admission Nos. 8, 9, and 10, and Interrogatory No. 9**

The Danlar Defendants next challenge Plaintiff's answers to RFAs Nos. 8, 9, and 10 and Interrogatory No. 9.  RFA No. 8 asks Plaintiff to admit that "none of the Defendants ever offered to sell any of the Domain Names to Plaintiff."  (Doc. 83-1 at 2.)  RFA No. 9 asks Plaintiff to admit that "none of the Defendants ever offered to sell any of the Domain Names to any third party."  (*Id.*)  RFA No. 10 asks Plaintiff to admit that "none of the Defendants ever requested any payment from Plaintiff relating to any of the Domain Names."  (*Id.*)  Interrogatory No. 9, as discussed above, asks Plaintiff to explain any denials of the Danlar Defendants' RFAs and identify documentary evidence supporting the denials. (Doc. 83-2 at 3.)  Plaintiff denied RFAs Nos. 8, 9, and 10, (Doc. 83-1 at 2-3), and Plaintiff's objections and original answer to Interrogatory No. 9 are set forth in Section 1, *supra*.  With respect to RFAs Nos. 8, 9, and 10, Plaintiff supplemented its answer by stating that

> Danlar's agent demanded $10,000 for the site.  The actual date is unknown.  It was a telephone call.  Defendants [sic] agent requested $10,000.  This was in a telephone conversation.  There are no written documents.

(Doc. 83-5 at 2.)

In its response to the Danlar Defendants' consolidated discovery motions, Plaintiff for the first time objects that RFAs Nos. 8, 9, and 10 are compound because they ask for admissions about three separate domain names.  (Doc. 86 at 3.)  Again, while there is some merit to these objections, Plaintiff raised them for the first time in its response, and the Court therefore deems them to have been waived.  *Pham*, 193 F.R.D. at 661-62.  Plaintiff has proffered grounds for its denials of these RFAs as to the domain name www.knittlestowing.com, which denials are therefore deemed sufficient.   Regarding the domain names www.knittletowing.com and www.knittles.com, the record currently provides no basis for Plaintiff's denials.  Plaintiff cannot

4

in good faith use the basis for its denials as to www.knittlestowing.com, to support its denials as to the other two domain names. Fed. R. Civ. P. 36(a)(4). Plaintiff is therefore ordered to clearly and separately admit or deny RFAs Nos. 8, 9, and 10 as to the domain names www.knittletowing.com and www.knittles.com.

Again, the Court agrees with Plaintiff's timely objection that Interrogatory No. 9 is vague in asking for a "detailed explanation" for Plaintiff's denials of RFAs Nos. 8, 9, and 10, without specifying what details are sought. In their consolidated discovery motions, the Danlar Defendants seek to fill in the blanks, so to speak, by listing various details they would now like to have regarding Plaintiff's denials of these RFAs. (Doc. 83 at 6-7.) However, their efforts to request specific details are untimely, and Plaintiff's objection on this point is sustained. As to the domain name www.knittlestowing.com, Plaintiff has offered an explanation for its denial and its answer is deemed adequate. If, however, Plaintiff persists in denying RFAs Nos. 8, 9, and 10 as to the other two domain names, then Plaintiff should explain its denials in a supplemental answer to Interrogatory No. 9.

3. **Request for Admission No. 13 and Interrogatory No. 9**

The Danlar Defendants next take issue with Plaintiff's answers to RFA No. 13 and Interrogatory No. 9. In RFA No. 13, the Danlar Defendants ask Plaintiff to admit that "at all times from on or about January 30, 2008 through August 20, 2014, the website found at www.danlar.com has never included any marking indicating an association with Knittles Towing." (Doc. 83-1 at 3.) Interrogatory No. 9, as discussed above, asks Plaintiff to explain its denials of the Danlar Defendants' RFAs and identify documentary evidence in support of the denials. (Doc. 83-2 at 3.) Plaintiff denied RFA No. 13 (Doc. 83-1 at 3), and its objections and original answer to Interrogatory No. 9 are set forth in Section 1, *supra*. With respect to RFA No.

13, Plaintiff supplemented its answer by stating that "[t]he Knittle search term went to Danlar at [sic] one or more times." (Doc. 83-5 at 2.)

The parties appear to disagree regarding the extent to which a marking can be said to have been "included" on the Danlar Defendants' website. The Danlar Defendants suggest that only words or images found on the website itself are "included" on it. (Doc. 83 at 8-9.) Plaintiff, in contrast, appears to believe that "[t]he Knittle search term," which allegedly forwarded users to Danlar's website, could also be considered "included" on it. (Doc. 86 at 4.) In taking this position, Plaintiff may, understandably, be trying to avoid an admission that could be misconstrued to eviscerate the heart of its claims, *i.e.*, that the Danlar Defendants configured its competitor's domain names to forward users to their own website. This may well be an excess of caution; a forward from "the Knittle search term" to Danlar's website does not, to the Court's mind, equate to a marking "included" on Danlar's website. Nevertheless, given the centrality of the issue to Plaintiff's claims, the Court will order the Danlar Defendants to clarify RFA No. 13, limiting it to markings actually found on the www.danlar.com website itself, and expressly excluding search terms and domain names that forwarded users to the website, if Defendants wish to continue to pursue this RFA. Plaintiff will have seven (7) days after receipt of the amended RFA to serve an amended answer to it. If Plaintiff denies the amended RFA, Plaintiff should also serve an amended answer to Interrogatory No. 9 explaining its denial.

4.     **Request for Admission No. 14 and Interrogatory No. 9**

The next discovery responses with which the Danlar Defendants take issue are Plaintiff's answers to RFA No. 14 and Interrogatory No. 9.[3] In RFA No. 14, the Danlar Defendants ask Plaintiff to admit that "from on or about January 30, 2008 until on or about April 6, 2011, none

---

[3] Originally, the Danlar Defendants included RFA No. 15 in this portion of its consolidated discovery motions. (Doc. 83 at 7.) However, the Danlar Defendants withdrew RFA No. 15 from the Court's consideration in its reply. (Doc. 93 at 2.)

of the Domain Names were configured to forward Internet traffic to the domain name www.danlar.com." (Doc. 83-1 at 3.) Interrogatory No. 9, as discussed above, asks Plaintiff to explain its denials of the Danlar Defendants' RFAs and identify documentary evidence in support of the denials. (Doc. 83-2 at 3.) Plaintiff denied RFA No. 14 (Doc. 83-1 at 3), and its original objections and answer to Interrogatory No. 9 are set forth in Section 1, *supra*. Plaintiff supplemented its answer to Interrogatory No. 9 with respect to RFA No. 14 by stating that "[d]iscovery is ongoing as set forth in the original response." (Doc. 83-5 at 2.)

The record contains support for Plaintiff's denial of RFA No. 14. (*See, e.g.*, Doc. 85-4 at 4, 6-7; Doc. 86-5 at 1.) For example, the Danlar Defendants' own expert report suggests that the specified domain names were configured to forward to a Danlar website at some point in 2010. (Doc. 85-4 at 6.) The Court therefore deems Plaintiff's denial of this RFA to be sufficient. However, Plaintiff did not explain its denial in answer to Interrogatory No. 9. Rather, Plaintiff explained its denial for the first time in its response to the Danlar Defendants' consolidated discovery motions. (Doc. 86 at 3.) Plaintiff is therefore ordered to explain its denial in the form of a sworn answer to Interrogatory No. 9.

5.      **Request for Admission No. 16 and Interrogatories Nos. 9 and 10**

The Danlar Defendants next challenge Plaintiff's answers to RFA No. 16 and Interrogatories Nos. 9 and 10. In RFA No. 16, the Danlar Defendants ask Plaintiff to admit that "the document prepared by Mak Towing, Inc….Bates-number Danlar RRFP 8-0001, was the first complaint by any person to any governmental entity regarding Defendants' registration or use of any domain names." (Doc. 83-1 at 4.) Interrogatory No. 9, as discussed above, asks Plaintiff to explain its denials of the Danlar Defendants' RFAs and identify documentary evidence in support of its denials. (Doc. 83-2 at 3.) Interrogatory No. 10 is essentially identical

to Interrogatory No. 9, except that it is limited to RFAs Nos. 8 to 23.  (*Id.* at 4.)  Plaintiff denied RFA No. 16 (Doc. 83-1 at 4), and its original objections and answer to Interrogatory No. 9 are set forth in Section 1, *supra*.  Plaintiff objected to and answered Interrogatory No. 10 as

> excessively vague and not a proper interrogatory and discovery is just commencing.  Plaintiff denied the requests as they were untrue.  For example, a complaint was made to both 'Go Daddy' and the NMPRC.  Plaintiff did suffer damages, and is entitled to statutory damages for Defendants' wrongful acts.  Documentation showing decreases in towing have been produced.

(Doc. 83-2 at 4.)  Plaintiff supplemented its answers to Interrogatories Nos. 9 and 10 with respect to RFA No. 16 by stating that "[d]iscovery is ongoing as set forth in the original response.  In addition, it is not known what other complaints were made until additional discovery is completed."  (Doc. 83-5 at 2.)

The record currently before the Court contains no basis for Plaintiff's denial of RFA No. 16.  Plaintiff's supplemental answer to Interrogatory No. 10 suggests that Plaintiff may actually wish to neither admit nor deny the RFA until it has obtained further discovery.  If so, then Plaintiff must clearly state "that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny."  Fed. R. Civ. P. 36(a)(4).  In the alternative, if Plaintiff actually meant to deny RFA No. 16 outright, it is hereby ordered to supplement its answer to Interrogatory No. 9, identifying any earlier complaint "by any person to any governmental entity regarding the Danlar Defendants' registration or use of any domain names," with sufficient specificity that the Danlar Defendants will be able to seek out the earlier complaint.

6. **Request for Admission No. 19 and Interrogatories Nos. 9 and 10**

The Danlar Defendants next challenge Plaintiff's answers to RFA No. 19 and Interrogatories Nos. 9 and 10.  In RFA No. 19, the Danlar Defendants ask Plaintiff to admit that

"as of August 20, 2014, Plaintiff has never (apart from this litigation) initiated any dispute-resolution proceeding or arbitration proceeding regarding the Domain Names." (Doc. 83-1 at 5.) Interrogatories Nos. 9 and 10, as discussed above, request that Plaintiff explain any denials of the Danlar Defendants' RFAs and identify documentary evidence in support of the denials. (Doc. 83-2 at 3.) Plaintiff denied RFA No. 19 (Doc. 83-1 at 5), and its original objections and answers to Interrogatories Nos. 9 and 10 are set forth in Sections 1 and 5, *supra*. Plaintiff supplemented its answers to Interrogatories Nos. 9 and 10 with respect to RFA No. 19 by stating that the "NM PRC was contacted by telephone and also Defendants' representative was also [sic] contacted, by telephone, and has requested $10,000." (Doc. 83-5 at 2.)

There appear to be grounds in the record to support Plaintiff's denial of RFA No. 19; arguably, contacting the New Mexico Public Regulation Commission ("NMPRC") could be considered "initiat[ing] a dispute-resolution proceeding." (Doc. 83-1 at 5; Doc. 83-5 at 2.) Plaintiff's answer to this RFA is therefore deemed sufficient. However, as currently written, Plaintiff's supplemental answer to Interrogatory No. 10 fails to indicate whether it was Plaintiff, or some other competitor, who contacted the NMPRC. (Doc. 83-5 at 2.) Plaintiff is therefore ordered to amend its supplemental answer to Interrogatory No. 10, clarifying that a representative of the Plaintiff contacted the NMPRC, as Plaintiff alleges in its response to the Danlar Defendants' consolidated discovery motions. (*See* Doc. 86 at 4.) The Court declines to order Plaintiff to offer particular details in answer to Interrogatories Nos. 9 and 10, based on its ruling that these interrogatories are vague and fail to specify what details they seek.

7.     **Request for Admission No. 20 and Interrogatory No. 9**

The next discovery responses with which the Danlar Defendants take issue are Plaintiff's answers to RFA No. 20 and Interrogatory No. 9. In RFA No. 20, the Danlar Defendants ask

Plaintiff to admit that "as of August 20, 2014, none of the Defendants has ever been enjoined from using any domain name." (Doc. 83-1 at 5.) Interrogatory No. 9, as discussed above, asks Plaintiff to explain its denials of the Danlar Defendants' RFAs and identify documentary evidence in support of its denials. (Doc. 83-2 at 3.) Plaintiff denied RFA No. 20 (Doc. 83-1 at 5), and its original objections and answer to Interrogatory No. 9 are set forth in Section 1, *supra*. Plaintiff supplemented its answer to Interrogatory No. 9 with respect to RFA No. 20 by stating that "[d]iscovery is ongoing. In addition, the settlement agreement, at the request of Defendant, are [sic] written as confidential. It is unknown what language is contained therein." (Doc. 83-5 at 3.)

In its response to the Danlar Defendants' consolidated discovery motions, Plaintiff asserts its belief that the NMPRC enjoined the Danlar Defendants from using its competitors' domain names, and that the settlement agreements in "multiple" earlier lawsuits against these Defendants may contain similar injunctions. (Doc. 86 at 4.) The Danlar Defendants protest that only a court can "enjoin," (Doc. 83 at 12), but Plaintiff suggests that the NMPRC or a settlement agreement may also do so. (Doc. 86 at 4.) *Black's Law Dictionary* provides two definitions for the term "enjoin," specifically: (1) "[t]o require; command; positively direct"; and, (2) "[t]o require a person, by writ of injunction, to perform, or to abstain or desist from, some act." *Black's Law Dictionary* 529 (6th ed. 1990). Based on the first definition, the Court concludes that the NMPRC could have "enjoined" the Danlar Defendants from using its competitors' domain names. The Court therefore deems Plaintiff's denial of RFA No. 20 to be sufficient. However, Plaintiff provided no explanation for its denial of RFA No. 20 in its answer to Interrogatory No.

9.[4]  The Court will therefore order Plaintiff to explain its denial in the form of a sworn interrogatory answer.

8. **Request for Admission No. 22 and Interrogatories Nos. 9 and 10**

The Danlar Defendants next challenge Plaintiff's answers to RFA No. 22 and Interrogatories Nos. 9 and 10.  In RFA No. 22, the Danlar Defendants ask Plaintiff to admit that it "has no evidence that any person seeking towing services was redirected from any of the Domain Names to the website located at www.danlar.com."  (Doc. 83-1 at 5.)  Interrogatories Nos. 9 and 10, as discussed above, ask Plaintiff to explain its denials of the Danlar Defendants' RFAs and identify documentary evidence in support of the denials.  (Doc. 83-2 at 3.)  Plaintiff denied RFA No. 22 (Doc. 83-1 at 5), and its original objections and answers to Interrogatories Nos. 9 and 10 are set forth in Sections 1 and 5, *supra*.  Plaintiff supplemented its answers to Interrogatories Nos. 9 and 10 with respect to RFA No. 19 by stating that "[d]iscovery is ongoing."  (Doc. 83-5 at 3.)

In its response to the Danlar Defendants' consolidated discovery motions, Plaintiff identifies grounds for its denial of RFA No. 22.  (Doc. 86 at 4-5; *see also generally* Docs. 79, 85, 91.)  Specifically, Plaintiff notes that the Danlar Defendants have admitted that "there were multiple redirections" from competitors' domain names to the Danlar Defendants' website; and, "Plaintiff's business suffered" during the time the domain names at issue were redirected.  (Doc. 86 at 4-5.)  This evidence is not conclusive, but it does support the inference that customers were redirected from the domain names at issue to the Danlar Defendants' website.  The Court therefore deems Plaintiff's denial of RFA No. 22 to be sufficient.

---

[4] At most, Plaintiff provided a basis on which to neither admit nor deny the RFA based on lack of information after a reasonable inquiry, regarding the terms of the settlement agreements in prior lawsuits.  (Doc. 83-5 at 3.)

Again, however, Plaintiff provided no explanation for its denial of RFA No. 22 in its answers to Interrogatories Nos. 9 and 10. (Doc. 83-2 at 3; Doc. 83-5 at 3.) Rather, Plaintiff explained its denial for the first time in its response to the Danlar Defendants' consolidated discovery motions. (Doc. 86 at 4-5.) The Court will therefore order Plaintiff to explain its denial of RFA No. 22 in the form of a sworn interrogatory answer.

9. **Interrogatory No. 5**

The Danlar Defendants next take issue with Plaintiff's answer to their Interrogatory No. 5, in which they sought "the factual basis for the allegation…that 'Plaintiff has spent substantial time, money, and resources developing and protecting its trademarks[,] service mark and business name.'" (Doc. 83-2 at 2.) In answer to this interrogatory, Plaintiff stated,

> Knittles has been in business since August 1974. It has advertised over the years. It has distinctive vehicles. It has maintained relationships with clients by giving logo items, periodic gifts, and holiday items with the logo.

(*Id.*) In its response to the Danlar Defendants' consolidated discovery motions, Plaintiff added that it has

> spent time over forty (40) years developing [its] name and reputation. This is not a separate line item in any financial statement…. [T]hey do not have any special documentation to show that. It is merely part of on-going business. The Defendants have received copies of the Plaintiff's tax returns showing all of their expenses…. Plaintiff does not believe there is anything further or additional at this time.

(Doc. 86 at 5.)

The Court finds Plaintiff's answer to Interrogatory No. 5 inadequate. If, as suggested by Plaintiff's response to the Danlar Defendants' consolidated discovery motions, Plaintiff wishes to answer the interrogatory by referring to specific business records such as tax returns, it must specifically identify each such record by Bates number in a supplemental answer to the interrogatory. Fed. R. Civ. P. 33(d); *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D.

295 (D. Kan. 1996) (to comply with Rule 33(d), party must "specifically designate what business records answer each interrogatory; such records must contain the information sought by the interrogatory; and the burden of deriving the answer from them must be substantially the same for the party seeking the information"). Moreover, if such documentation does not provide a complete answer to the interrogatory, then Plaintiff's owners or representatives should supplement the information contained therein as needed. Plaintiff's current sworn answer contains but a scant portion of what Plaintiff's owners or representatives can likely ascertain or remember about their marketing efforts from 1974 to the present. The Court will grant the Danlar Defendants' motion to compel a more complete answer to this interrogatory.

10.   **Interrogatory No. 6**

The Danlar Defendants next seek to compel a more comprehensive answer to their Interrogatory No. 6, in which they sought "the factual basis for the allegation…that the alleged acts of the Defendants 'caused damage to Knittles business through lost customers and customer opportunities, lost reputation, and damage to reputation.'" (Doc. 83-2 at 2.) The sum total of Plaintiff's answer to this interrogatory was: "[b]usiness decreased when Defendants appropriated the Plaintiff's name. The decrease in business is shown by the financial records." (*Id.* at 3.)

The Court finds Plaintiff's answer to Interrogatory No. 6 wholly inadequate. The term "financial records" is so vague as to be almost meaningless. To the extent that Plaintiff seeks to rely on "financial records" to answer the interrogatory, again, it must specifically identify such documents by Bates number in a supplemental answer to this interrogatory. Fed. R. Civ. P. 33(d). If, as Plaintiff's response to the Danlar Defendants' consolidated discovery motions suggests, Plaintiff is also relying on other documents, such as Plaintiff's expert witness' report

and portions of Defendant Larry Knippel's deposition, to answer this interrogatory, then Plaintiff should specifically identify the relevant portions of these documents in its answer, as well.

11.     **Request for Production No. 2**

The Danlar Defendants next take issue with Plaintiff's response to their Request for Production ("RFP") No. 2, which sought "all documents or tangible items which are referred to in your answers to Interrogatories, and…upon which you relied in framing your answers to Interrogatories." (Doc. 83-3 at 2.) In response to this request for production, Plaintiff stated: "[f]inancial information has been provided. No additional documents are known at this time." (*Id.*) Plaintiff's response is again wholly inadequate. "Financial information," like "financial records," is a phrase so vague as to be nearly meaningless. Moreover, the portions of Plaintiff's answers to interrogatories in the record currently before the Court reference a number of documents and items that appear to fall outside even so broad a category as this, including "all documents showing the actions of Defendants obtaining any and all websites that include the name 'Knittles,'" "logo items," "statutes," "PRC rules and regulations," "the records produced," "the expert report," a "summary of monthly worksheets" and "documents showing decreases in towing." (Doc. 83-2.)

Plaintiff is hereby directed to supplement its response to RFP No. 2, and to produce all documents and tangible items in its possession, custody, or control that are responsive to this request.[5] To the extent that Plaintiff has already produced these documents, Plaintiff need not produce them again, but must specifically identify responsive documents already produced by Bates number.

---

[5] In lieu of production, Plaintiff may allow inspection of items not readily susceptible to production, *e.g.*, its "distinctive vehicles," (Doc. 83-2 at 2). Fed. R. Civ. P. 34(a)(1)(A).

12. **<u>Request for Production No. 5</u>**

Finally, the Danlar Defendants seek to compel a more complete response to their RFP No. 5, which requested "[a]ll documents and tangible objects that support your allegations in Paragraph 16 of Plaintiff's Second Amended Complaint…or Paragraph 18 of Plaintiff's proposed Third Amended Complaint." (Doc. 83-3 at 3.) Paragraph 18 of Plaintiff's Third Amended Complaint states that Plaintiff "has spent substantial time, money, and resources developing and protecting its trademark[,] service mark and business name." (Doc. 68 at 3.) In response to RFP No. 5, Plaintiff stated, "[w]e did not keep separate accounts for the items requested, so there are no *additional* documents responsive to this request." (*Id.* (emphasis added).) Plaintiff's response is inadequate in two respects. First, it implies that Plaintiff has already produced all documents responsive to this request, but fails to identify which documents these might be. Second, it does not address whether it has possession, custody, or control of any tangible objects responsive to the request, such as "logo items" or "distinctive vehicles." (Doc. 83-2 at 2.). Plaintiff is directed to supplement its response to RFP No. 5 to specifically identify responsive documents already produced by Bates number, and to produce or permit inspection of any additional responsive documents and tangible objects in its possession, custody, or control.

13. **<u>Danlar Defendants' request for attorneys' fees and costs</u>**

If a party's motion to compel is granted, the Court must generally require the opposing party and/or its counsel to pay the movant's reasonable expenses incurred in making the motion. Fed. R. Civ. P. 37(a)(5)(A). However, the Court must not order such expenses if

> the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; the opposing party's nondisclosure, response, or objection was substantially justified; or, other circumstances make an award of expenses unjust.

Id.  Similarly, Rule 37(a)(5)(B) provides that if a motion to compel is denied, the Court must generally award expenses to the party opposing the motion, but again, not if "the motion was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(a)(5)(B).  Finally, Rule 37(a)(5)(C) provides that "[i]f the motion is granted in part and denied in part, the court…may…apportion the reasonable expenses for the motion."  Fed. R. Civ. P. 37(a)(5)(C).

In this case, the Court has granted the larger part of the Danlar Defendants' consolidated discovery motions, and finds that Plaintiff's discovery responses were terse at best, and at times wholly inadequate.  Also, notwithstanding Plaintiff's argument to the contrary, the Danlar Defendants did make a good faith attempt to obtain the discovery without court action.  Specifically, defense counsel sent a very detailed letter to Plaintiff's counsel on October 3, 2014, requesting supplementation by October 10, 2014.  (Doc. 83-4.)  Plaintiff did supplement its responses on October 10, 2014.  (Doc. 83-5.)  However, defense counsel correctly deemed Plaintiff's supplemental responses to also be inadequate, and therefore sent Plaintiff's counsel a draft of the Danlar Defendants' consolidated discovery motions on October 13, 2014.  (Doc. 83 at 3.)  Defense counsel received an "out of office" message from Plaintiff's counsel's office, and filed the motions later that day.  (*Id.*)  Plaintiff contends that the "out of office" message informed defense counsel that Plaintiff's counsel was out of the country until October 20, 2014, suggesting that the Danlar Defendants should have waited until after Plaintiff's counsel returned to file the motions.  (Doc. 86 at 1.)  Nevertheless, by October 13, 2014, the Danlar Defendants

had already tried and failed to obtain the requested discovery without court action. Rule 37 does not require their attorney to keep trying to get better responses *ad infinitum*.[6]

However, the Court notes that some of the Danlar Defendants' discovery requests were overbroad, compound, and/or potentially overburdensome, although Plaintiff did not object to the requests on these bases. Moreover, the Court has not granted the Danlar Defendants' consolidated discovery motions in their entirety. The Court will therefore in its discretion award the Danlar Defendants a portion of their attorneys' fees and costs incurred in bringing these motions. The Danlar Defendants are directed to submit their counsel's time records and documentation of expenses related to the motions so that the Court may determine the appropriate amount of fees and costs to be awarded.

## Conclusion

In summary, the Court orders as follows.

(1) Plaintiff is ordered to amend its answer to RFA No. 7 in compliance with Rule 36 to include clear and separate answers as to each of the three domain names specified, and to attest to a reasonable inquiry regarding any part of its answer in which it states that it lacks sufficient knowledge to admit or deny the request. If Plaintiff persists in denying RFA No. 7 with respect to the domain names www.knittlestowing.com and www.knittletowing.com, it is further ordered to explain these denials in a supplemental answer to Interrogatory No. 9.

(2) Plaintiff is ordered to supplement its answers to RFAs Nos. 8, 9, and 10, with clear and separate answers as to the domain names www.knittletowing.com and www.knittles.com. Further, if Plaintiff denies RFAs Nos. 8, 9, and/or 10 with respect to these domain names,

---

[6] Although Rule 37 does not require counsel to make repeated attempts to resolve discovery disputes without court intervention, in this matter many of the disputes between the parties are fairly minor and likely could have been resolved far more quickly and efficiently had defense counsel simply picked up the phone and engaged in a genuine, good faith conversation with Plaintiff's counsel before filing any motions. This factor is not a basis for rejecting the Danlar Defendants' fee request entirely, but will influence the amount of fees the Court ultimately awards.

Plaintiff is ordered to supplement its answer to Interrogatory No. 9 to provide an explanation for its denials.

(3) The Danlar Defendants are ordered to amend RFA No. 13 to expressly limit it to markings actually found on the website at www.danlar.com, and to expressly exclude search terms and domain names that forwarded users to the website. Plaintiff will have seven days after receipt of the amended RFA to serve an amended answer to it. If Plaintiff denies the amended RFA, Plaintiff is ordered to serve an amended answer to Interrogatory No. 9 explaining its denial.

(4) Plaintiff is ordered to supplement its answers to Interrogatories Nos. 9 and 10 to provide explanations for its denials of RFAs Nos. 14, 19, 20, and 22.

(5) Plaintiff is ordered to amend its answer to RFA No. 16 to state that it has insufficient information to either admit or deny the RFA after a reasonable inquiry, or, in the alternative, to supplement its answers to Interrogatories Nos. 9 and 10 to provide an explanation for its denial of this RFA.

(6) Plaintiff is ordered to supplement its answers to Interrogatories Nos. 5 and 6 to include specific references to each document on which it wishes to rely by Bates number. Plaintiff is further ordered to supplement its answers to include any responsive information in its possession, custody, or control not contained in the referenced documents.

(7) Plaintiff is ordered to supplement its responses to RFPs Nos. 2 and 5, and to produce all documents and tangible items in its possession, custody, or control that are responsive to these requests. To the extent that Plaintiff has already produced these documents, Plaintiff need not produce them again, but must specifically identify each responsive document already produced by Bates number.

Plaintiff is ordered to serve all supplemental responses and documents on the Danlar Defendants within seven (7) calendar days of entry of this Order. The Danlar Defendants are to submit their counsel's time records and documentation of expenses related to this motion to the Court within fourteen (14) days of entry of this Order, so that the Court may determine the appropriate amount of fees and costs Plaintiff should be required to pay.

        IT IS SO ORDERED.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE